UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 22-12-JJM-PAS-1 |
| | : | |
| EFRAIN COLON-GARCIA. | : | |

**MEMORANDUM AND ORDER
REGARDING MOTION TO SET BAIL**

Now pending before the Court is the motion of Defendant Efrain Colon-Garcia to set bail. ECF No. 109. Following hearings held on October 21 and November 16, 2022, and based on the reasons that follow, the Court reaffirms its Order of Detention (ECF No. 92) and denies the motion to set bail.[1]

**I.      Background**

This case began in July 2020 with the arrests of five Rhode Island-based alleged conspirators (Luis Alvarez ("Alvarez"), William Lugo, Hector Rios, Victor Luyando-Casanova ("Luyando-Casanova") and Natasha Belardo). One of these (Alvarez) is now adjudicated based on an Information in a separate matter. United States v. Alvarez, 22-cr-112MSM, ECF No. 30; Minute Entry of Oct. 27, 2022. The remaining Rhode Island-based conspirators are charged in this case by an Indictment returned on January 26, 2022, which added Luis Roman ("Roman") and the Florida-based alleged conspirators, Defendant and his wife, Defendant Yaniris Colon-Senquiz ("Yaniris"). ECF No. 33.

---

[1] In entering this Order setting conditions of release, the Court is aware of a pending warrant issued by the State on an alleged violation arising from the charged conduct in light of Defendant's 2015 conviction for drug trafficking. While the pendency of this warrant may well be a reason why Defendant's release will mean that he will end up not appearing because he will be held without bail in state custody, standing alone, that is not a reason for detention. See United States v. Salgado, CR No. 20-53JJM, 2020 WL 4747931, at *4 (D.R.I. Aug. 17, 2020) (Bail Reform Act is focused on risk that defendant may flee or abscond by virtue of his own volition; ICE detainer does not *per se* establish either serious risk of flight or risk of nonappearance pursuant to § 3142(e)).

At the time of Defendant's arraignment on April 1, 2022, the Court held a detention hearing pursuant to 18 U.S.C. § 3142(f)(1) based on an Indictment charging him with conspiring from December 8, 2017, until July 14, 2020, (when the Rhode Island-based Co-Defendants were arrested and charged) to distribute 5 kilograms or more of cocaine and using the United States mail to do so. ECF No. 33 at 1-2. The resulting Order of Detention, based on both danger and risk of nonappearance, contains a detailed explanation, including the pivotal findings that the government has strong evidence establishing that Defendant was the lead participant in a multi-state drug trafficking organization ("DTO"), that the conspiracy began a year after Defendant's release on state supervision from serving a state sentence for drug trafficking and that Defendant had no verifiable employment during the period of the conspiracy apart from business entities used to move the DTO's proceeds. ECF No. 92 at 3. In support of the instant motion to set bail, Defendant argues that the evidence supporting these findings has changed and asks the Court to reassess them. ECF No. 109. This memorandum and order assumes the reader's familiarity with the evidence and rationale for the original Order of Detention, which are unaltered except for the changed circumstances discussed below.

**II.     Changed Circumstances**

The most significant changed circumstance to which Defendant points arises from Defendant's receipt and review of discovery in this case. Based on this material, Defendant acknowledges that the government has very strong evidence of a DTO that brought as many as sixty packages containing one to three kilos of cocaine each via the United States Postal Service to Rhode Island, principally Woonsocket, as well as that the DTO's conspirators include family, friends and acquaintances of Defendant and/or Yaniris, his wife. Defendant further acknowledges that the government has strong evidence that Yaniris played a lead role in the

DTO, including that she was communicating with other conspirators about tracking packages, she was a joint account holder (with Defendant) on accounts used for DTO proceeds and she texted conspirators facing arrest with assurances of her support and assistance. As to himself, however, Defendant contends that the evidence is significantly less strong in that the only evidence unambiguously linking him to a leadership role in the DTO is the testimony of a cooperator, Alvarez, who is potentially tainted by Alvarez's status as an admitted member of the DTO. Defendant argues that there is little or nothing to corroborate Alvarez's statements regarding Defendant's participation in the conspiracy. Defendant's argument boils down to the contention that, if Alvarez is found to be lacking in credibility in regards to his testimony about Defendant, the government can otherwise show only that Defendant was a passive spouse living in the household with his drug-trafficking wife, but not that he was an active DTO participant. See United States v. Hernandez, 301 F.3d 886, 890-91 (8th Cir. 2002) (affirming insufficiency of evidence that defendant lived with drug trafficker where trafficking paraphernalia was found and was present while he was delivering drugs to customers in vehicle registered to defendant); see also United States v. Thomas, 467 F.3d 49, 54 (1st Cir. 2006) (the defendant "could 'be charged with knowledge of a fact if she deliberately closed her eyes to something that otherwise would have been obvious to her.'" (quoting United States v. Cheal, 389 F.3d 35, 42 n.7 (1st Cir.2004)).

      Alvarez, the cooperator, was originally charged as a participant in this DTO by a criminal complaint following his arrest on July 14, 2020, along with the other Rhode Island-based conspirators (but not Roman or Defendant and Yaniris, who lived in Florida and were not arrested and charged until February 2022). Alvarez was detained at his initial appearance in July 2020. United States v. Alvarez, 22-cr-112MSM, ECF No. 7. He signed a plea agreement on October 4, 2022. Id. at ECF No. 31. On October 27, 2022, while the instant motion to set bail

conditions for Defendant was pending, Alvarez's guilty plea was accepted, and he was adjudicated guilty on an Information charging him with trafficking five kilograms or more of cocaine and unlawful use of the mail. United States v. Alvarez, 22-cr-112MSM, ECF No. 31; Minute Entry of Oct. 27, 2022. These are the same as the charges for which Defendant is indicted in this case. The Information recites that Defendant, his wife Yaniris, and other Defendants named in this case were all members of the DTO. Id. at ECF No. 30. In his plea agreement, Alvarez stipulated that the amount of cocaine attributable to him was at least 50 kilograms and that he possessed fourteen guns in connection with drug trafficking. Id. at ECF No. 31. The government represents that Alvarez will testify that the DTO's activities began after Defendant was released by the state, that Defendant played a lead role in directing the DTO's operations, that the Rhode Island-based conspirators needed Defendant's experience as a sophisticated drug trafficker to make decisions and run the DTO in a business-like way and that it was Defendant who drew his wife and the other conspirators into the DTO, while keeping his own conduct in furtherance of the DTO as invisible as possible.

      Defendant argues that the government's evidence linking him to the DTO rests almost entirely on the testimony of Alvarez and that there is no other evidence to corroborate that he was a leader of the DTO or that he was involved in the conspiracy at all. He contends that a fact finder might well conclude that, until his 2015 conviction, Defendant had been a drug trafficker, but that, after that conviction and his son's death, he withdrew from drug trafficking, moved to Florida and began a new and law-abiding life, including working full time in a managerial position at an automobile dealership.

To counter this argument, the government presented an overview of some of its corroborating evidence. This establishes that over sixty parcels presumptively[2] containing cocaine were sent to various addresses of friends, relatives and acquaintances (both indicted and not indicted) of Defendant and his wife in Rhode Island, mostly in Woonsocket. As to Defendant, the evidence reflects, first, hundreds of communications between Defendant and these individuals during the conspiracy period; however, there appears to be nothing (except for the testimony of Alvarez) proving that these communications related to the DTO. Second, several of the addresses to which parcels were sent are venues that were associated with Defendant before he moved to Florida; these include an apartment in a building he owned, two of his former residences and a venue that had been associated with one of his defunct Rhode Island businesses. Relatedly, a vehicle used to pick up parcels containing cocaine is associated with one of those businesses. Third, a search of Alvarez's residence uncovered drug payment ledgers, including one undated scrap of paper that references the need to pay $2,000 to "Tio," who the government represents is Defendant. Fourth, among significant evidence establishing that Yaniris was actively involved with a search in June 2020 for a missing parcel containing cocaine, the government has a WhatsApp text sent separately to Defendant (as well as to his wife) to which the tracking slip for the missing parcel was attached, as well as a message sent to Defendant's phone with the notation, "net Tio Vale." Fifth, the government can show that $181,000 in what it alleges are drug proceeds were paid into Rhode Island banks (where Defendant no longer had any operating businesses) and withdrawn from joint accounts that were under the control of both Defendant and his wife, including that Defendant himself made many withdrawals. Sixth, on the day of the Rhode Island arrests in July 2020, Defendant had five

---

[2] Nine of the DTO parcels were confirmed to contain cocaine; other parcels have various indicia linking them to the DTO.

WhatsApp calls with Co-Defendant Luyando-Casanova, although the content or subject of these calls is unknown.  And last, on the day following the July 2020 arrests, Defendant shut down his phone service and (with his wife) closed their joint accounts.

The government argues that this corroborating evidence must be considered in light of Defendant's admitted status as a sophisticated, twice-convicted, drug trafficker capable of deliberately insulating himself from direct involvement with the DTO.

The second change in the evidence from the original detention hearing relates to Defendant's past employment.  Defendant concedes that he has serious past criminal history as a drug trafficker, with state convictions in 2010 and 2015; on the 2015 conviction, Defendant was sentenced to serve twenty-seven months of a ten-year term.  State of Rhode Island v. Colon-Garcia, P2-2015-3537A; State of Rhode Island v. Colon-Garcia, P2-2010-1438A.  However, after Defendant was released in October 2016 and his son died of a drug overdose in 2017, he, his wife and three children left Rhode Island and moved to Florida where an adult daughter and two of his sisters live.  Pretrial Services has now verified that in mid-2020, Defendant was hired as a manager for a Florida Infiniti dealership and worked in this capacity until his 2022 arrest.  This employer confirmed that Defendant was a reliable employee and advised Pretrial Services that it would not take Defendant back only because of the notoriety of his arrest.  This new information establishes Defendant's ability to sustain law-abiding work and, to that extent, mitigates somewhat the risk that he will resume drug trafficking on release.  However, it is not evidence of employment unrelated to drug trafficking during the conspiracy period.

The third change in the evidence from the original detention hearing relates to Defendant's health.  He alleges, and the government does not dispute, that he has been suffering from untreated sleep issues and serious (resulting at least once in hospitalization) hypertension.

This evidence mitigates the risk of flight at least to the extent that a forty-year-old man with health concerns is less likely to flee if flight would jeopardize his access to necessary health care.

**III.     Analysis and Statement of Reasons**

In considering whether these changed circumstances still support continuing Defendant's detention, the Court must examine whether the government's evidence is strong enough to motivate Defendant to flee or is now sufficiently lacking in weight such that Defendant's motivation is to remain, comply with conditions and defend the case because of the likelihood of exoneration.  See 18 U.S.C. § 3142(g); United States v. Khalil, No. CR 13-62-01 S, 2013 WL 5571747, at *1 (D.R.I. Oct. 9, 2013) (denying motion to revoke a detention order based in part upon the weight of the evidence against the defendant).  Mindful that the alleged conduct occurred while Defendant was subject to Rhode Island's conditions of probation following the 2015 drug trafficking conviction, the Court must also consider whether it is sufficient to support the finding by clear and convincing evidence that, if released to rejoin his wife in Florida, no conditions are sufficient to reasonably assure that Defendant will not reengage in drug trafficking.  See id. § 3142; United States v. DeSimone, CR No. 09-024S, 2009 WL 904688, at *2 (D.R.I. Apr. 1, 2009).  In performing this analysis, the Court must remain mindful of the presumption of innocence.  See DeSimone, 2009 WL 904688, at *1.

There is no doubt that the weight of the government's evidence has shifted as this case has been pending.  On balance, however, I find that it remains very strong, strengthened particularly by the most recent developments in October 2022, when Alvarez signed the plea agreement and was adjudicated on the Information, following his agreement with the government's statement of facts.  I further find the government's somewhat limited corroborating evidence of Defendant's participation in the DTO must be weighed in light of

Defendant's long history of experience in drug trafficking. That is, Defendant is sophisticated and is not at all analogous to the naïve spouse or living companion who cannot be presumed to understand that seemingly passive conduct is supporting drug trafficking. See United States v. Hernandez, 301 F.3d at 890-91; see also Thomas, 467 F.3d at 54. Further, the evidence of Defendant's criminal history of convictions for drug trafficking supports the inference that the paucity of direct evidence is the result of Defendant's canny manipulation of others to avoid creating evidence of his role. Therefore, I find that there remains a very substantial motivation for Defendant to flee, as well as a significant risk (clearly and convincingly established) that, if released, he will continue to deploy his skills in drug trafficking in disregard of court conditions (as the government's evidence demonstrates he did while on state probation from 2017 until 2020). Further, while some of the new evidence mitigates these risks somewhat, in that Defendant has shown he is capable of sustaining legitimate employment, as well as that his health conditions mean flight must be tempered by the need for ongoing medical treatment of blood pressure and sleep apnea, I do not find that these are sufficient to offset the previously found risk of flight and the clear and convincing risk of danger so as to permit the setting of conditions.

### IV.   Conclusion

Based on the foregoing, my Order of Detention (ECF No. 92) remains in full force and effect and Defendant's motion to set bail (ECF No. 109) is denied.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 22, 2022